**AFFIDAVIT**

I, Dana L. Kaegel, being duly sworn, depose and state as follows:

A.   Background

1. I am a Special Agent of the Federal Bureau of Investigation (FBI). I have been a Special Agent since October of 2008. I am currently assigned to the Burlington, Vermont Resident Agency. I hold a Bachelor of Science degree in Computer Science from the United States Naval Academy. While serving as a Special Agent, I have investigated a variety of criminal matters.

2. I have probable cause to believe that the electronic mail ("e-mail") account "zeusdesfor@aol.com" controlled by the web-based e-mail service provider and online information portal known as America Online, Inc. (AOL), which is headquartered in 22000 AOL Way, Dulles, Virginia 20166, contains evidence of violation of 18 U.S.C. § 1204; international parental kidnapping, removing a child from the United States on or about September 22, 2009, and retaining a child who has been in the United States, outside of the United States from September 2009 to the present, with the intent to obstruct the lawful exercise of parental rights by Janet Jenkins. The property to be searched and search procedure are described in Attachment A. The items to be seized are described in Attachment B.

3. I have personally participated in the investigation, and make this affidavit based upon my investigation and include information provided by other law enforcement officials; court documentation; information provided by Janet Jenkins and Jenkins' attorney, Sarah Star; and based on my experience and training as a Special Agent of the FBI. Because this affidavit is

1

being submitted for the limited purpose of securing a search warrant, I have not included details of every aspect of the investigation.

B. <u>Background Regarding Computers, the Internet, and E-Mail</u>

4. The term "computer" as used herein is defined in 18 U.S.C. § 1030 (e) (1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communication facility directly related to or operating in conjunction with such device. Based on my training, experience, and knowledge, I know the following:

   a. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the Internet, an individual computer must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The World Wide Web ("www") is a functionality of the Internet, which allows users of the Internet to share information. A user accesses the Internet from a computer network or Internet Service Provider ("ISP") that connects to the Internet. The ISP assigns each user an Internet Protocol ("IP") Address. Each IP address is unique. Every computer or device on the Internet is referenced by a unique IP address the same way every telephone number has a unique telephone number. An IP address is a series of numbers separated by a period. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address.

   b. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any means, including modem, local area network, wireless network, and numerous other

methods. With Internet access, a computer user can transport an image file from the Internet or from another user's computer to his own computer, so that the image file is stored in his computer. The user can then display the image file on his computer screen, can choose to save the image on this computer, and can print out a hard copy of the image by using a printer.

  c. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, and then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

 5. Based on my training and experience, I know that AOL is a company that provides web-based Internet e-mail access to the general public and that stores electronic communications, including opened and unopened e-mail for AOL subscribers that may be located on the computers of AOL. Accordingly, this affidavit and application for a search warrant seeks authorization solely to search the computer accounts and/or files by following the procedures described in Attachment A. Based on my training and experience, I also know:

  a. AOL is an online information portal, drawing millions of people to its network of websites with a mix of news, entertainment, and online shopping, as well as its search engine and Internet directory. The company also offers registered users personalized Web pages, e-mail, instant messaging, and message boards. AOL allows users to create and post a personal profile online. A profile is a webpage that users create to describe themselves. Included in a profile is information such as a person's age, where they live and their interests. Users who create a profile

3

can choose a unique AOL ID. Once a profile is created, other users with profiles may contact the user via AOL Instant Messenger or other instant messaging services. Subscribers obtain an account by registering on the Internet with AOL. AOL requests subscribers to provide basic information, such as name, gender, zip code, and other personal/biographical information. However, AOL does not verify the information provided.

      b. AOL maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. Theses records include account access information, e-mail transaction information, and account application information.

      c. Subscribers to AOL may access their accounts on servers maintained and/or owned by AOL from any computer connected to the Internet located anywhere in the world.

      d. Any e-mail that is sent to an AOL subscriber is stored in the subscriber's "mailbox" on AOL's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by AOL. If the message is not deleted by the subscriber, the account is below the maximum storage limit, and the subscriber accesses the account periodically, messages can remain on AOL servers indefinitely.

      e. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to AOL's servers, and then transmitted to its end destination. AOL users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes it from the AOL server, the e-mail can remain on the system indefinitely. The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at AOL, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations.

4

   f. An AOL subscriber can store files, including e-mails and image files, on servers maintained and/or owned by AOL.

   g. E-mails and image files stored on an AOL server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the AOL server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence. A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the AOL server.

C. <u>Relationship between Miller and Jenkins</u>

  6. Janet Jenkins has told me the following:

   a. In or about December, 1997, Janet Jenkins met and began a personal relationship with Lisa Miller, who at the time represented that she was a lesbian. Both women lived in Virginia at the time.

   b. Prior to December, 1997, Miller was married to Kurt McConchie, but Miller divorced him.

   c. In or about February, 1998, Jenkins and Miller became engaged. The two began researching state laws regarding parental protections for same-sex couples.

   d. In or about April, 1998, Miller moved into Jenkins' home in Virginia.

   e. In December, 2000, Miller and Jenkins traveled to Vermont and obtained a civil union pursuant to Vermont law.

   f. In or about January, 2001, Jenkins and Miller identified an alternative insemination specialist in Virginia for the purpose of pursuing a pregnancy of Miller. Jenkins

paid approximately fifty thousand dollars to facilitate the alternative insemination that led to the birth of Isabella Ruth Miller-Jenkins (IMJ) on April 16, 2002.

    g. Jenkins and Miller planned to move to Vermont prior to IMJ's birth, but because of complications with Miller's pregnancy, IMJ was born in Virginia.

    7. On June 15, 2007, Rutland Vermont Family Court made the following findings of fact, as part of the litigation between Jenkins and Miller concerning custody of IMJ:

    a. In August, 2002, Miller and Jenkins moved to Fair Haven, Vermont, where they had purchased a home together.

    b. During 2002 and 2003, Miller and Jenkins referred to each other as the mothers of IMJ and shared equally in the care of IMJ, except when Jenkins worked outside the home.

    8. Jenkins has told me the following:

    a. Miller became pregnant again through alternative insemination in May 2003, but had a miscarriage.

    b. After the miscarriage, Miller's behavior changed.

    c. In or about August, 2003, Jenkins told Miller that she wanted a separation due to her concerns over Miller's behavior and refusal to seek help. Jenkins hoped that the separation would encourage Miller to seek help.

    d. In September, 2003, Miller and IMJ moved to Virginia. During that Fall, Jenkins traveled to Virginia regularly on weekends to visit IMJ.

D.    <u>Litigation Prior to 2007</u>

    9. Miller filed a complaint for dissolution of the civil union in Rutland Family Court in November 2003.

10. On June 17, 2004, the Rutland Family Court issued a temporary order regarding parental rights and responsibilities. This order awarded Lisa temporary legal and physical responsibility for IMJ and awarded Janet parent-child contact for two weekends in June, one weekend in July, and the third full week of each month, beginning in August 2004. The Family Court also ordered Lisa to permit Janet to have telephone contact with IMJ once daily.

11. On July 1, 2004, Miller filed a "Petition to Establish Parentage and for Declaratory Relief" in the Frederick County Virginia Circuit Court. Miller asserted that she had "sole custody" of IMJ, and asked the court to declare that she was the "sole parent of" IMJ.

12. In July 2004, the Rutland Family Court reaffirmed its "jurisdiction over this case including all parent-child contact issues," stated that it would not "defer to a different State that would preclude the parties from a remedy," and made clear that the temporary order for parent-child contact was to be followed. The Court added that "[f]ailure of the custodial parent to allow contact will result in an immediate hearing on the need to change custody."

13. On September 2, 2004, the Rutland Family Court found Miller in contempt for willful refusal to comply with the temporary visitation order.

14. On September 9, 2004, the Virginia Circuit Court held that it had jurisdiction to determine parentage and parental rights of IMJ, and later ruled that Jenkins had no "claims of parentage or visitation rights over" IMJ.

15. On August 4, 2006, the Vermont Supreme Court affirmed the decision of the Rutland Family Court that it had jurisdiction over the child custody matter and that Jenkins had parent-child contact rights.

16. On November 28, 2006, the Court of Appeals of Virginia vacated the Virginia Circuit Court order denying parental rights to Jenkins, holding that the Virginia courts should defer to the jurisdiction of the Vermont courts.

E. Litigation 2007 through 2010

17. In April, 2007, Miller and Jenkins were involved in a trial in Rutland Family Court concerning custody of IMJ. After the trial, the court granted parental rights to Miller and ordered visitation rights for Jenkins with IMJ.

18. In April, 2007, the Virginia Court of Appeals reversed a decision by the Virginia Circuit Court declining to enforce the Vermont custody order. This decision was affirmed by the Supreme Court of Virginia on June 6, 2008.

19. During 2008, the Rutland Family Court issued a series of orders finding Miller in contempt for refusing to comply with its visitation orders.

20. At a hearing in Rutland Family Court on January 28, 2009, the Court explicitly warned Miller that failure to comply with ordered visits could lead to a transfer in custody. Miller stated that she would comply with the ordered visits.

21. The Rutland Family Court ordered a contact visit for March 7-14, 2009, which did not occur. The Rutland Family Court ordered a make-up visit in Vermont for April 9-13, 2009, which did not occur. The Rutland Family Court ordered a visit in Vermont for May 23-29, 2009, which did not occur. The Rutland Family Court ordered a visit in Virginia for June 6-8, 2009, which did not occur. The Rutland Family Court ordered a visit for July 10-August 8, 2009, which did not occur.

22. On August 21, 2009, the Rutland Family Court held a hearing on Jenkins' Motion to Modify Parental Rights and Responsibilities. Miller was not present for the hearing. The Court

concluded on November 20, 2009, that Miller willfully interfered with Jenkins' visitation rights. Moreover, the Court ordered that Jenkins would have sole physical and legal custody of IMJ and that the custody transfer occur on January 1, 2010.

F. <u>International Travel by Miller and IMJ</u>

23. Intelligence Officer Melanie Granger, Canadian Border Services Agency has provided me the following information from Canadian Border Records and Mexican Authorities:

 a. Miller and a second passenger crossed the Canadian border at the Rainbow Bridge between Buffalo, NY, and Canada on September 22, 2009 in a vehicle bearing New York license plate 20719TX.

 b. It is likely that the second passenger's name was not entered into records because the second passenger was a minor.

24. I have conducted an inquiry of U.S. database records that provided New York license plate 20719TX as registered to Omnibus Taxi. The vehicle registered to the plate is a 2002 Chevrolet Impala.

25. A Grand Jury subpoena return from Mexicana Airlines provided that on September 22, 2009, Lisa Miller and IMJ departed Toronto, Ontario and arrived in Mexico City, Mexico on Mexicana Flight 887.

26. A Grand Jury subpoena return from TACA provided that on September 22, 2009, Lisa Miller and IMJ departed Mexico City Juarez International Airport and arrived in San Salvador El Salvador International Airport on TACA Flight 0231.

27. Further investigation has indicated that Lisa Miller and IMJ are suspected to have arrived in Augusto C. Sandino Airport, Nicaragua on or about September 23, 2009.

28. FBI Intelligence Analyst Abigail Pope has told me that United States border records,

which document entries into the United States, do not indicate that Miller or IMJ have returned to the United States since September 22, 2009.

29. At a hearing in Rutland Family Court in February 2010, a representative of Liberty Christian Academy testified that IMJ had not been a student there in the 2009 - 2010 school year and that the school had no information about her location. At the same hearing, a friend of Miller's testified that the last time she saw Miller was in early September 2009 and that she had no idea where Miller was.

G. Email Address "zeusdesfor@aol.com"

30. Sarah Star advised me that zuesdesfor@aol.com is an e-mail address that has been used by Lisa Miller.

31. Results from a Grand Jury subpoena indicated that the account holder listed for the zeusdesfor@aol.com was Lisa Miller of 101 Convington Lane, Winchester, Virginia.. The subpoena return also indicated that the account status was active.

32. A query of a law enforcement database indicate 101 Covington Lane, Winchester, Virginia as an address associated with Lisa Miller.

33. Pursuant to 18 U.S.C. § 2703 (f), on February 22, 2010, First Assistant to the United States Attorney and Criminal Chief Paul J. Van de Graaf sent a preservation letter to AOL requesting that the company preserve a copy of the zeusdesfor@aol.com e-mail account for 90 days to permit the issuance of the appropriate legal process to search the account and seize specified items. On May 18, 2010, Assistant United States Attorney Annika Green Frostick sent a preservation letter to AOL requesting the company preserve the zeusdesfor@aol.com e-mail account for an additional 90 days.

34. 18 U.S.C. §§ 2701-11, is entitled "Stored Wire and Electronic Communications and

Transactional Records Access." Section 2703(f) of that Act enables law enforcement to seek a warrant requiring an ISP to disclose the contents of electronic communications pursuant to the procedures in the Federal Rules of Criminal Procedure. Section 2703(a) also provides that any court with jurisdiction over the offense under investigation may issue a section 2703 warrant for out-of-district records. Section 2703(g) of the Act specifies that a law enforcement agent need not be present to serve or execute the warrant.

35. On April 27, 2010 a criminal complaint and arrest warrant were issued for Lisa Miller. The United States Attorney's Office filed a motion to seal both the complaint and the warrant, which was granted by the Magistrate Judge for the District of Vermont.

36. Based on the foregoing, I submit there is probable cause to believe that there have been violations of 18 U.S.C. § 1204, and that the evidence and instrumentalities of such criminal offenses are located at the property described in Attachment A. I therefore request that a search warrant be issued directed to AOL to allow agents to search the property described in Attachment A, and to seize the items described in Attachment B.

Dated at Burlington, in the District of Vermont, this _10th_ day of August, 2010.

_Dana Kaegel_
Dana Kaegel
Special Agent, Federal Bureau of Investigation

Sworn to and subscribed before me this _10th_ day of August, 2010.

JOHN M. CONROY
United States Magistrate Judge